### WESTFALL et v NOTMAN et

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 18, 1935

F. E. Hunter, Alliance, for plaintiffs in error.

Morgan, Cailor & Cunningham, Youngstown, and Andrews & Morris, Alliance, for defendants in error.

## OPINION

By NICHOLS, J.

The matter is presented to this court upon the claim of plaintiffs in error that the verdict of the jury is against the weight of the evidence and is contrary to law, and that the trial court erred in overruling the motion of the plaintiffs below to direct the jury to return a verdict that the paper writing is not the last will and testament of E. H. Westfall, deceased.

In considering whether the verdict of the jury is against the weight of the evidence, we are met with the claim made by counsel for defendants in error that this court has once passed upon the weight of the evidence and is now precluded by §11577, GC, from again reversing the cause upon the weight of the evidence. Our attention is called to the following language in the opinion of this court upon the first error proceeding in this matter:

"The conclusior of this court is, in effect, as suggested, that the second will was duly executed, became a valid last will, that by its terms, as established by the evidence, it revoked the first will, which was admitted to probate. The second will has never been found and the legal presumption then develops that it was destroyed by the testator and that its destruction revoked the second will. The revocation of the second will did not revive the first will, with the result that the decedent died intestate. The verdict of the jury, having found otherwise, was against the weight of the evidence."

On page 9 of the former opinion of this Court of Appeals it was further stated:

"It is the opinion of this court, as before suggested, that the will was properly witnessed and executed, and, therefore, the verdict of the jury was against the manifest weight of the evidence, and prejudicial error occurred in this respect."

As above stated, under stipulation of counsel upon the second trial, the cause was submitted upon the record of the first trial, and the evidence in the second trial is therefore identical with that of the first trial, and if §11577, GC, were controlling, there might be a serious question whether this court could again consider the weight of the evidence as a ground of reversal in this second error proceeding. But both counsel for plaintiffs and defendants have seemed to overlook, at least they have failed to cite to this court the case of **Werner v Rowley, 129 Oh St, 15,** from which we quote the syllabi:

"1. A legislative act which attempts, directly or indirectly, to limit or abridge the power of the Courts of Appeals to review the judgments of the Courts of Common Pleas, contravenes the provisions of **§6, Article IV, of the State Constitution** and is void.

2. This right to review extends not only to errors of law occurring at the trial, but also to errors of fact, including an assignment of error that the verdict of a jury is against the manifest weight of the evidence.

3. Where a trial court has granted one new trial upon the weight of the evidence and upon a second trial is precluded, by §11577, GC, from granting a second new trial against the same party upon the same grounds, the Court of Appeals has the power to examine the record and to weigh the evidence for the purpose of determining whether the verdict on the second trial was in fact against the weight of the evidence (**Cleveland Ry. Co. v Trendel, 101 Oh St, 316, and Rolf v Heil, 113 Oh St, 113,** are overruled)."

Hence, we conclude that in this error proceeding we may again consider the weight of the evidence limited only by the constitutional provision that this court may not reverse the judgment of the trial court upon the weight of the evidence except upon the concurrence of all the members of this court. But, in passing upon the question of the weight of the evidence in this case, we are required to consider first

whether the trial court erred in overruling the motions made by both parties at the conclusion of all the evidence to require the jury to return a verdict in favor of the respective parties.

First, it is claimed by defendants in error that the court was required to overrule these motions and submit the cause to a jury because of the particular language of §12082, GC, fixing the procedure in a will contest case as follows:

"Sec 12082 GC. Contesting wills: Issue, verdict. An issue must be made up either by pleadings or an order on the journal, whether or not the writing produced is the last will or codicil of the testator, which shall be tried by a jury. The verdict shall be conclusive, unless a new trial be granted, or the judgment is reversed or vacated."

The case of Clark et v McFarland et, 99 Oh St, 100, after reviewing the decisions of the courts of Ohio under this quoted section, held that:

"In proceedings in contest of a last will and testament, a motion to direct a verdict in behalf of the proponents of the will, at the close of the evidence of the contestants, must be overruled by the court, if some evidence has been offered in support of the issues involved. The scintilla rule of evidence is to be applied in such proceedings, as in the ordinary jury trial of a civil action."

But, the case of Clark et v McFarland et, supra, has recently been expressly overruled by the Supreme Court of Ohio, in the case of Hamden Lodge v Ohio Fuel Gas Co., 127 Oh St, 469, from which we quote:

"2. The so-called 'scintilla rule' requiring a trial judge to submit a case to the jury if there is any evidence, however slight, tending to support each material issue, no longer obtains in Ohio. Second and third paragraphs of the syllabus in Ellis & Morton v Ohio Life Insurance and Trust Co., 4 Oh St, 628, 64 Am. Dec., 610, and the case of Clark v McFarland, 99 Oh St, 100, 124 NE 164, overruled."

The case of Clark v McFarland, supra, was a will contest case, and hence we take it that the Supreme Court of Ohio in Hamden Lodge v Ohio Fuel Gas Co., 127 Oh St, 469, has taken the position that the provisions of §12082, GC, which require the issue to be tried to a jury, have no greater force and effect than would exist in the

case of any other civil action which is tryable to a jury. We think the Supreme Court has arrived at the proper determination of this question, as it seems to this court that the purpose which the legislature had in mind when enacting §12082 GC was simply to provide that this special statutory proceeding, known as a will contest, was such a civil action as was to be tried by a jury in the ordinary manner of jury trials in civil actions, and with all the incidents of a jury trial in ordinary civil actions.

Now, in the proceeding at bar, both parties having moved the trial court for a directed verdict at the conclusion of all the evidence, just what should the trial court have done?

Although not cited to it by counsel, we refer to the case of Industrial Commission of Ohio v Carden, 129 Oh St, 344, from which case we quote from the syllabus:

"3. Where, at the close of all the testimony, both parties to the litigation move for an instructed verdict, the 'most favorable light' rule disappears and the trial court must consider the testimony of each side for just what it is worth.

4. Under such circumstances the trial court sits as a jury. * * *."

We find and hold that this decision of the Supreme Court in Industrial Commission of Ohio v Carden, supra, does no violence to the provisions of §12082, GC, which provides that the issue in a will contest case shall be tried to a jury, for in the event that a motion is made by both parties at the conclusion of all the evidence the trial court sits as "a jury."

From the decision written by Stephenson, J., in Industrial Commission of Ohio v Carden, on page 346, 129 Oh St, we quote:

"When motions for directed verdicts were interposed by both sides, each admitted that the testimony of the other was true and that it would be considered in its most favorable light toward the party moved against. In considering the 'favorable light' phase under such circumstances, we arrive at the only rational conclusion, that the 'favorable light' goes out and the testimony of each of the parties litigant is considered for what it is worth."

But the question arises whether it was mandatory for the trial court to sit as a jury in this case when motions were made by both parties for a directed verdict at the conclusion of all the evidence. It is

noted that after the motions for a directed verdict neither party requested the case to go to the jury, but each excepted to the overruling of its motion for a directed verdict. When each party moved for a directed verdict we take it that the situation thereby created was the same as though each party had demurred to the evidence of the other, and admitted that the testimony material and relevant to the issue produced at the trial was true, and that the court, then sitting as a jury, should determine the issues between the parties upon this evidence "for what it was worth," conceding it to be true, and therein lies the difference between the trial court determining the action as a jury upon the motion for directed verdict, and the jury determining it under instructions from the court. In the one instance the trial court would take the material, relevant testimony of the parties as true; in the second instance the jury might weigh the testimony from the stand point of its truth or falsity and might conclude that the witnesses, or any of them, had sworn falsely, and thereby give no weight to such false testimony. This court has often given as a reason for its refusal to reverse a judgment upon the weight of the evidence that the jury in the trial court had the better opportunity to judge of the weight and credit to be given to the testimony, because of the fact that they had seen the witnesses, observed their manner and demeanor upon the witness stand, and it has been said that this court can not set aside the verdict of the jury unless the testimony is such as to "shock the conscience," generously assuming that the court has a conscience.

It can be seen that this matter of making motions for directed verdict is fraught with much danger. Our courts of last resort have uniformly held that if the trial court has erred in its decision upon motion for directed verdict, that this court should render the judgment which the trial court should have rendered. We can see no reason why this rule should not apply to a case where both parties have moved for directed verdict, and, coming to this conclusion, we must find in this case that the testimony was such that reasonable minds could not differ, but must come to the conclusion that E. H. Westfall had made a new will the latter part of May or the early part of June, 1931, while he was of sound mind and under no restraint, which will was executed in all respects in conformity to law, and which expressly revoked the will made by him on April 15th, 1930, and that the will executed by said E. H. Westfall in 1931

had never been found, and the legal presumption had arisen that it was destroyed by the testator, and that its destruction revoked it, and the further presumption arose that the revocation of the will of 1931 did not revive the will of April 15th, 1930, and with the ultimate result that the decedent died intestate. It was, therefore, the duty of the trial court to so find and to render the verdict that the paper writing which had been probated as the last will of E. H. Westfall, deceased, was not his last will and testament.

It may be said that after careful reading of the record in this case we can come to no other conclusion than that the verdict of the jury was manifestly against the weight of the evidence, as it was clearly shown, and not controverted by the evidence that E. H. Westfall, deceased, had executed a new will in May or June of 1931, which, by its terms, expressly revoked the will executed on April 15, 1930; that the later will could not be found and that there had been no reviver of the will of April 15, 1930.

In order that the jury might have arrived at the verdict returned by them, it would have been necessary that the jury conclude that the only witness who testified to the execution of the new will of 1931 was not telling the truth about the matters testified to. There was no effort made by the defendants to impeach this witness, but it might have seemed strange to the jury that the witness could not remember the name of the other witness to the will, could not remember much of the contents of the new will which she had written for Dr. Westfall, remembering only the first two paragraphs and the last two paragraphs, and that it was strange that Dr. Westfall did not execute this second will in duplicate, in view of the fact that he had executed duplicate copies of the will of April 15th, 1930.

In the ordinary case it might be argued that the jury would see this witness upon the stand, hear her testify, see her action and demeanor upon the stand, and that the theory upon which the verdict of the jury should be sustained is that they concluded that the testimony of this witness was perjured, and therefore without weight or credit, leaving only the prima facie case established by the defendants in the introduction of the will of April 15, 1930, and order of probate thereof.

But, it must be remembered that so far as the second trial of this case is concerned, the jury did not see this witness upon the witness stand, would not have any op-

portunity to observe her manner and demeanor, and were in no better position to determine the truthfulness of her testimony than this court, all for the reason that this case was submitted to the second jury upon the typewritten record in the first case, which was read to the jury, so that upon the second trial we are compelled to come to the conclusion that the verdict of the jury is manifestly against the weight of the evidence and contrary to law.

Having considered all of the errors assigned in this case, and coming to the conclusion that substantial justice has not been done, the judgment of the trial court is reversed, and coming now to enter the judgment which should have been rendered by the Common Pleas Court upon the motion of plaintiffs for a directed verdict at the conclusion of all the evidence, final judgment is entered in favor of the plaintiffs in error.

Judgment reversed and final judgment entered in favor of plaintiffs in error.

CARTER and ROBERTS, JJ, concur.