[Cite as *Smith v. Strong*, 2017-Ohio-6918.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Joya Smith

        Appellee

v.

Richard Strong

        Appellant

Court of Appeals No. L-17-1058

Trial Court No. DV 2016-0498

**DECISION AND JUDGMENT**

Decided: July 21, 2017

* * * * *

Thomas P. Goodwin, for appellee.

John W. Yerman, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Richard Strong, filed this accelerated appeal from the February 13, 2017 judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, granting a domestic violence civil protection order ("CPO") against him to appellee, Joya Smith. We affirm.

## I. Background

{¶ 2} On August 16, 2016, Ms. Smith sought an ex parte domestic violence civil protection order against Mr. Strong. The magistrate who heard the petition denied Ms. Smith's request and set the matter for a full hearing. Mr. Strong and Ms. Smith testified at the full hearing on December 12, 2016. They testified that they have a child together, but are no longer in a relationship; in fact, the parties have very little communication or interaction. Both have parenting time with their child and all custody exchanges occur at either the child's school or the Toledo Police Department's Scott Park police station. Generally, Ms. Smith's teenaged daughter from a different relationship assists with the exchange by walking the parties' child from the delivering parent's car to the receiving parent's car.

{¶ 3} On August 14, 2016, the parties met at Scott Park to transfer their child from Ms. Smith to Mr. Strong. Both parties testified that the exchange happened as usual. Afterward, Ms. Smith left with her older daughter and Mr. Strong left with the parties' child. At this point, the parties' accounts of the events diverge.

{¶ 4} Ms. Smith testified that she was driving home on Secor Road and heard a car "speeding up really fast" behind her. When she checked her mirror, she saw Mr. Strong. She claimed that Mr. Strong drove very close to her bumper and then cut off a car to move into the lane to her right. While Mr. Strong was next to her, Ms. Smith alleged that he drove his car very close to her while looking into her car and that he pushed her over in her lane. Mr. Strong's car never touched Ms. Smith's car. Ms. Smith testified that she

2.

attempted to maintain her lane because other cars were around and that she thought she was "going to end up in a very bad accident." When Mr. Strong drove off, Ms. Smith pulled into a parking lot to calm herself. She testified that she called 911, but the dispatcher told her they were too busy to assist and referred her to the police. Ms. Smith also claimed that she filed a police report the next day. She did not seek to admit either the 911 report or the police report into evidence at the CPO hearing.

{¶ 5} On cross-examination, Ms. Smith admitted that she and Mr. Strong still exchange custody in person and that she never sought to modify the parties' custody-exchange arrangements. Since the incident, however, she sometimes takes another adult with her to the custody exchanges and she modified the route she takes home. Ms. Smith also admitted that Mr. Strong did not threaten her immediately before the incident, but claimed that "a few years" before this event Mr. Strong told her that "he would make sure that my life was miserable from now on by harassing me and make sure he knows where I'm at at all times, stalking me."

{¶ 6} Mr. Strong did not recall any of the events to which Ms. Smith testified. The only specific detail that Mr. Strong remembered from the August 14 drive was that he and the child were singing in the car. Mr. Strong did not recall the route he took home or recall seeing Ms. Smith's car on the drive. He also testified that Ms. Smith attended a custody exchange a few days later, on August 17, and that exchange happened as it normally did. Mr. Strong claimed that he offered to have a third party conduct the custody exchange with Ms. Smith, but Ms. Smith refused. Mr. Strong also claimed that

3.

he never threatened Ms. Smith and that Ms. Smith never previously sought a CPO against him.

{¶ 7} On December 16, 2016, the trial court entered an order of protection against Mr. Strong that is effective until August 16, 2018. On December 29, 2016, Mr. Strong filed objections to the magistrate's decision to grant the CPO. In his objections Mr. Strong alleged that the magistrate's decision was against the manifest weight of the evidence and was contrary to case law and "prudent Court discretion." He sought leave to supplement his objections after the transcript of the hearing was filed. On January 4, 2017, the trial court filed an order noting that the transcript was filed on January 3, 2017, and giving Mr. Strong ten days to supplement his objections. Mr. Strong filed his supplemental objections on January 17, 2017.

{¶ 8} In its February 13, 2017 judgment entry, the trial court first struck Mr. Strong's supplemental objections as untimely. The court held that the ten-day deadline expired on January 14 and Mr. Strong did not file his objections until January 17. The court then overruled the general objection Mr. Strong filed on December 29 and adopted the magistrate's December 16 decision.

{¶ 9} Mr. Strong appeals the trial court's granting of a CPO to Ms. Smith. He raises two assignments of error:

APPELLANT'S FIRST ASSIGNMENT OF ERROR

The Trial Court wrongfully denied Strong's supplemental objections to the Magistrate's order as untimely filed.

4.

APPELLANT'S SECOND ASSIGNMENT OF ERROR

The Trial Court's decision to grant the Civil Protection Order fell against the manifest weight of the evidence.

## II. Law and Analysis

### A. Timeliness of Mr. Strong's Supplemental Objections

{¶ 10} In Mr. Strong's first assignment of error, he contends that the trial court erred in striking his January 17 supplemental objections as untimely. He argues that ten days from January 4, 2017, was Saturday, January 14, 2017; that the following Monday, January 16, 2017, was Martin Luther King Jr. Day and the clerk of courts' office was closed; and that he filed his supplemental objections on Tuesday, January 17, 2017, the next business day following the Saturday due date. Ms. Smith agrees that the trial court erred in finding the supplemental objections untimely, but contends that the error was harmless because Mr. Strong's supplemental objections were made on the same basis as his general objection and the court's judgment entry addressed the general objection.

{¶ 11} We agree with the parties that the trial court erred in striking Mr. Strong's supplemental objections. Civil Rule 6(A) provides instructions for computing the period of time in which a party must take some action. The date from which the period begins to run is not included. *Id.* "The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday." *Id.* In this case, ten days from the court's January 4 order was January 14, a Saturday. The "next

5.

day which is not a Saturday, Sunday, or legal holiday" was Tuesday, January 17 due to the Martin Luther King Jr. Day holiday on January 16. R.C. 1.14(B) (designating the third Monday in January as a legal holiday). As such, we find that Mr. Strong timely filed his supplemental objections and that the trial court erred in striking them.

{¶ 12} We also agree with Ms. Smith, however, that the error was harmless. Under Civ.R. 61,

> [N]o error or defect in any ruling or order or in anything done or omitted by the court * * * is ground for * * * vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

For an error to be harmless, the appellate court must weigh the prejudicial effect of the error and determine that the outcome would have been the same if the error had not occurred. *Miller v. Defiance Regional Med. Ctr.*, 6th Dist. Lucas No. L-06-1111, 2007-Ohio-7101, ¶ 20, citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 164, 407 N.E.2d 490 (1980).

{¶ 13} Here, Mr. Strong's general objection to the magistrate's decision was that it was against the manifest weight of the evidence, contrary to case law, and contrary to "prudent Court discretion." He reiterated those objections, albeit in an expanded form, in his stricken supplemental objections. Despite striking Mr. Strong's supplemental

6.

objections, the court carefully considered each of the elements required for granting a CPO, the case law, the parties' testimony, and the magistrate's finding that Ms. Smith was in reasonable fear of serious physical harm. In doing so, the trial court addressed the substance of each point in Mr. Strong's supplemental objections. Thus, we find that Mr. Strong was not prejudiced by the trial court striking his supplemental objections and the outcome would not have changed if the court considered the supplemental objections. Therefore, Mr. Strong's first assignment of error is not well-taken.

## B. Manifest Weight of the Evidence

{¶ 14} In his second assignment of error, Mr. Strong contends that the trial court's decision to grant the CPO was against the manifest weight of the evidence because Ms. Smith failed to prove that she was in reasonable fear of serious physical harm. Ms. Smith counters that the magistrate reasonably chose to believe her testimony over Mr. Strong's testimony and that her testimony established that she was entitled to a CPO.

{¶ 15} A person who is subject to domestic violence may petition a court for a protection order under R.C. 3113.31. To be entitled to a CPO, the petitioner must prove by a preponderance of the evidence that she is in danger of domestic violence. *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997), paragraph two of the syllabus. As pertinent here, domestic violence means "[a]ttempting to cause or recklessly causing bodily injury," or "[p]lacing another person by the threat of force in fear of imminent serious physical harm * * *." R.C. 3113.31(A)(1)(a) and (b). Intentionally driving a vehicle at another vehicle constitutes a threat of force; "[t]he fear that this particular

7.

threat of violence incites is domestic violence." *Gaydash v. Gaydash*, 168 Ohio App.3d 418, 2006-Ohio-4080, 860 N.E.2d 789, ¶ 16 (9th Dist.).

{¶ 16} Where, as here, the appellant challenges the trial court's decision to issue a CPO (rather than the terms of the CPO) we review the decision under a manifest weight of the evidence standard. *Gruber v. Hart*, 6th Dist. Ottawa No. OT-06-011, 2007-Ohio-873, ¶ 17. We will not reverse the trial court's decision if it is supported by some competent, credible evidence going to the all the essential elements of the case. *Edwards v. Reser*, 6th Dist. Ottawa No. OT-07-022, 2007-Ohio-6520, ¶ 25, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. "Further, on appeal, we presume the validity of the trial court's factual findings because the trial court is in the best position to observe the witnesses and weigh the credibility of the proffered testimony." *Id.*, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 17} The magistrate was in the best position to observe the witnesses and determine their credibility, so we defer to the magistrate's factual findings. The magistrate found Ms. Smith's version of events more credible and consequently determined that Mr. Strong followed closely on Ms. Smith's bumper and then drove beside her so closely that she had trouble maintaining her lane on a busy city road. Ms. Smith testified that she was afraid she would be involved in a serious car accident and needed to pull off the road to calm down after the incident. She also called 911 to report the incident and followed up by filing a police report. Ms. Smith's testimony was

8.

sufficient to show that Mr. Strong's action of driving his vehicle at Ms. Smith's vehicle placed Ms. Smith in reasonable fear of imminent serious physical harm. This constitutes domestic violence under R.C. 3113.31(A)(1)(b) and is some competent, credible evidence that Ms. Smith is entitled to a CPO. *Gaydash* at ¶ 16. Accordingly, the trial court did not err in adopting the magistrate's decision and granting the CPO, and Mr. Strong's second assignment of error is not well-taken.

### III. Conclusion

{¶ 18} The February 13, 2017 judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Mr. Strong is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.
CONCUR.

_____
JUDGE